IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHI CHEN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON PENDING MOTIONS<br><br><br>Case No. 2:15-CV-850 TS |
| RUI MAO, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>U.S. BANK NATIONAL ASSOCIATION, et al.,<br><br>    Defendants. | Case No. 2:15-CV-851 TS |

This matter is before the Court on Motions to Dismiss for Lack of Personal Jurisdiction and for Improper Venue filed by Defendants Quartzburg Gold, LP ("Quartzburg"), ISR Capital, LLC ("ISR"), Idaho State Regional Center, LLC ("ISRC"), and Sima Muroff (collectively, the "Quartzburg Defendants"). Also before the Court is Defendant U.S. Bank National Association's ("U.S. Bank") Motions to Transfer Venue.[1] For the reasons discussed below, the Court will deny the Motions to Dismiss for Lack of Personal Jurisdiction and grant the Motions to Transfer Venue.

---

[1] The Motions from both cases are considered together as they are substantially similar. U.S. Bank has also filed Motions to Dismiss, which have not been addressed.

1

## I. BACKGROUND

The following facts are taken from Plaintiffs' Complaints and the documents attached thereto.

Plaintiffs are Chinese investors ("Investors"). Quartzburg (through ISR), U.S. Bank, and ISRC entered into a Master Escrow Agreement ("Escrow Agreement"). Under the Escrow Agreement, U.S. Bank was the Escrow Agent.

The Escrow Agreement was intended to facilitate investments by individuals like the Investors for the purposes of qualifying for the EB-5 U.S. immigration investor program. The Escrow Agreement contemplated that numerous Investors would execute a Joinder to the Escrow Agreement ("Escrow Joinder") and each place at least $500,000 in escrow.

The Escrow Agreement allowed for disbursement of the Investors' funds only if certain conditions were met. Specifically, Plaintiffs allege that the escrowed funds were not to be released prior to the approval of the Investor's I-526 immigration petition.

Plaintiffs allege that none of the Investors' I-526 petitions were approved, but Quartzburg requested and received escrowed funds from U.S. Bank. All of Plaintiffs' claims arise out of this alleged improper disbursement of funds. Plaintiffs bring claims for breach of contract and the covenant of good faith and fair dealing, breach of fiduciary duty, conversion/monies had and received, and federal and state securities fraud.

## II. DISCUSSION

The Quartzburg Defendants argue that the Court lacks personal jurisdiction over them and that venue in Utah is improper. U.S. Bank seeks a transfer of venue. The Quartzburg Defendants do not oppose U.S. Bank's request to transfer.

A.  PERSONAL JURISDICTION

Plaintiffs bring both state and federal claims and invoke both federal question and diversity jurisdiction. The personal jurisdiction analysis varies slightly depending on whether Plaintiffs' claims are brought pursuant to federal question jurisdiction or diversity jurisdiction. The parties fail to recognize this and, as a result, improperly focus their arguments only on whether the Quartzburg Defendants had sufficient minimum contacts to support specific jurisdiction. This analysis, while helpful, is incomplete. A plaintiff must establish personal jurisdiction with respect to each claim he asserts.[2] By addressing only the minimum contacts analysis, the parties have failed to properly analyze Plaintiffs' claims based on federal question jurisdiction.

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'"[3] Plaintiffs' Fourth Cause of Action asserts "Federal Securities Fraud." While Plaintiffs fail to identify a particular statute, it appears that they are asserting claims under Section 10(b) of the Securities Exchange Act of 1934. This comports with the parties briefing related to Defendant U.S. Bank's Motions to Dismiss.[4] The Securities Exchange Act authorizes nationwide service of process.[5]

---

[2] 4A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.7 (3d ed. 2002).

[3] *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000) (quoting *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997)).

[4] Docket No. 24 in Case No. 2:15-CV-850 and Docket No. 14 in Case No. 2:15-CV-841.

[5] 15 U.S.C. § 78aa.

Having determined that the Securities Exchange Act provides for nationwide service of process, the Court must determine whether exercising jurisdiction over the Quartzburg Defendants comports with due process. "[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant."[6] "To establish that jurisdiction does not comport with Fifth Amendment due process principles, a defendant must first demonstrate 'that his liberty interests actually have been infringed.'"[7] "The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.'"[8]

In determining whether the Quartzburg Defendants have met this burden, the Court considers the following factors:

> (1) the extent of the defendant's contacts with the place where the action was filed; (2) the inconvenience to the defendant of having to defend in a jurisdiction other than that of his residence or place of business, including (a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought; (3) judicial economy; (4) the probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business; and (5) the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business.[9]

---

[6] *Peay*, 205 F.3d at 1212.

[7] *Id.* (quoting *Republic of Pan.*, 119 F.3d at 946).

[8] *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

[9] *Id.*

4

"'[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.'"[10]

Having considered these factors, the Court finds that the Quartzburg Defendants cannot meet their burden of showing that defending this action in Utah rises to a level of constitutional concern.

First, the Quartzburg Defendants' contacts with Utah are in dispute. However, to the extent any contacts exist, they appear to be minimal.

Second, the Quartzburg Defendants have failed to demonstrate any inconvenience in defending this action in Utah. The Quartzburg Defendants' business is far reaching and involves both foreign and domestic activities. The Quartzburg Defendants have been able to access counsel in this forum. Further, the Quartzburg Defendants are residents of Idaho, a relatively close distance to Utah. Any inconvenience is lessened by modern methods of communication and transportation.[11]

Third, there is nothing to indicate that judicial economy makes this forum unfair. Additionally, Plaintiffs argue that a large amount of discovery and discovery proceedings will take place in Utah. Plaintiffs state that a key witness in this case is a U.S. Bank employee located in Utah.

Finally, the Quartzburg Defendants' activities have effects outside the borders of their home state. As set forth above, this action arises out of Defendants' activities with Chinese investors and a national bank. Thus, Defendants "have not met their burden of demonstrating

---

[10] *Id.* (quoting *Republic of Pan.*, 119 F.3d at 947).

[11] *Id.* at 1213.

that the [Court's] assertion of jurisdiction will make litigation so difficult and inconvenient that they unfairly will be at a severe disadvantage compared to plaintiffs."[12]

Having determined that the Court may exercise personal jurisdiction over Plaintiffs' federal securities claim, the Court must now consider whether it may exercise pendent personal jurisdiction over the remaining state-law claims, even assuming the Court lacks an independent basis to assert personal jurisdiction over those claims.

Pendent personal jurisdiction often arises where, as here, "one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal jurisdiction."[13]

> Pendent personal jurisdiction . . . exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim. In essence, once a district court has personal jurisdiction over a defendant for one claim, it may "piggyback" onto that claim other claims over which it lacks independent personal jurisdiction, provided that all the claims arise from the same facts as the claim over which it has proper personal jurisdiction.[14]

Here, all of Plaintiffs' claims arise out of the same nucleus of operative fact. Plaintiffs' claims are based on the alleged improper disbursement of the Investors' escrowed funds. Thus, even assuming Court lacks personal jurisdiction over the Quartzburg Defendants for Plaintiffs'

---

[12] *Id.*

[13] *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180–81 (9th Cir. 2004); *see also IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) ("[U]nder the doctrine of pendent personal jurisdiction, where a federal statute authorizes nationwide service of process, and the federal and state claims derive from a common nucleus of operative fact, the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available.") (quotation marks omitted).

[14] *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002) (citations omitted).

state-law claims, the Court will exercise its discretion and will assert jurisdiction over these claims.[15]

B.   VENUE

The Quartzburg Defendants next argue that dismissal is appropriate for improper venue. U.S. Bank, in turn, argues for transfer of venue. While venue would be proper in Utah,[16] the Court agrees that transfer of venue is appropriate.

Through its Motions, U.S. Bank seeks enforcement of the forum selection clause contained in the Escrow Agreement.[17] Such clauses may be enforced through 28 U.S.C. § 1404(a).[18] That provision states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

The analysis of a motion under § 1404(a) differs depending on whether a valid forum selection clause exists. "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or *a forum non conveniens* motion) must evaluate both the convenience of the parties and various public-interest considerations."[19] However, where a valid

---

[15] *Id.* at 1273 (stating that "even where a court could legally exercise pendent personal jurisdiction over a claim, a district court retains discretion").

[16] 15 U.S.C. § 78aa(a) provides that venue is proper in a district where (1) the defendant is an inhabitant; (2) where the defendant is found; (3) where the defendant transacts business; or (4) where any act or transaction constituting the violation occurred. Even if venue was not proper under this statute, it would at least be proper under 28 U.S.C. § 1391(b)(3).

[17] For the purposes of these Motions, Plaintiffs do not argue that the forum selection clause is inapplicable or otherwise unenforceable.

[18] *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, ---U.S.---, 134 S.Ct. 568, 579 (2013).

[19] *Id.* at 581.

7

forum selection clause exists, it should be "given controlling weight in all but the most exceptional cases."[20] In such cases, "the plaintiff's choice of forum merits no weight" and the Court "may consider arguments about public-interest factors only."[21] "As the party acting in violation of the forum-selection clause, [Plaintiffs] bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer."[22] "Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases."[23]

Courts, including this court, have generally limited the application of *Atlantic Marine* to mandatory forum selection clauses.[24] Therefore, to determine the proper analysis to be applied, the Court must first determine whether the forum selection clause in the Escrow Agreement is mandatory or permissive.

Forum selection clauses may be either mandatory or permissive. "Mandatory forum selection clauses 'contain[ ] clear language showing that jurisdiction is appropriate only in the

---

[20] *Id.* (quotation marks omitted).

[21] *Id.* at 581–82. "Public-interest factors may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 581 n.6 (quotation marks omitted) (alteration in original).

[22] *Id.* at 583.

[23] *Id.* at 582.

[24] *See Nelson v. Aramark Sports & Entm't Servs., LLC*, No. 2:14-CV-474 DN, 2015 WL 1014579, at *2 (D. Utah Mar. 9, 2015) ("A forum-selection clause is only given controlling weight, and the *Atlantic Marine* holding is only applicable, when the clause is 'mandatory' rather than 'permissive.'"). Because the Court concludes that the forum selection clause is mandatory, the Court need not consider whether the *Atlantic Marine* framework should apply to a permissive forum selection clause.

8

designated forum.'"[25] "In contrast, permissive forum selection clauses authorize jurisdiction in a designated forum, but do not 'prohibit litigation elsewhere.'"[26] The Tenth Circuit has adopted the majority rule that "when venue is specified, such as when the parties designate a particular county or tribunal, and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory."[27] "Where only jurisdiction is specified, we will nonetheless enforce a forum selection clause if there is some additional language indicating the parties' intent to make venue exclusive."[28]

The forum selection clause at issue here states:

> <u>Consent to Jurisdiction and Venue</u>. In the event that any party hereto commences a lawsuit or other proceeding relating to or arising from this Master Escrow Agreement, the parties hereto agree that the <u>federal district court in Seattle, Washington</u> shall have jurisdiction over any such proceeding. If such court lacks federal subject matter jurisdiction, the parties agree that the <u>Superior Court of King County in Seattle, Washington</u> shall have jurisdiction. Any of these courts shall be proper venue for any such lawsuit or judicial proceeding and the parties hereto waive any objection to such venue. The parties hereto consent to and agree to submit to the jurisdiction of any of the courts specified herein and agree to accept service of process to vest personal jurisdiction over them in any of these courts.[29]

This provision has two parts. The first part—where the parties agree that either the federal or state court in Seattle, Washington shall have jurisdiction—is permissive. The Tenth Circuit has held that similar provisions are permissive unless they contain some language

---

[25] *Excell, Inc. v. Sterling Boiler & Mech., Inc.*, 106 F.3d 318, 321 (10th Cir. 1997) (quoting *Thompson v. Founders Grp. Int'l*, 886 P.2d 904, 910 (Kan. 1992)) (alteration in original).

[26] *Id.* (quoting *Thompson*, 886 P.2d at 910).

[27] *Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 927 (10th Cir. 2005).

[28] *Id.*

[29] Docket No. 2 Ex. A ¶ 13.

indicating that venue is exclusive.[30] If the forum selection clause only contained this provision, Plaintiffs' arguments against transfer would be correct. However, the forum selection clause contains a second part where the parties agree that "these courts shall be proper venue for any such lawsuit or judicial proceeding." As stated, "when venue is specified . . . and the designation is accompanied by mandatory or obligatory language, a forum selection clause will be enforced as mandatory."[31]

The Tenth Circuit addressed such a clause in *Milk 'N' More v. Beavert*.[32] The forum selection clause there stated, in pertinent part, that "venue shall be proper under this agreement in Johnson County, Kansas."[33] The Tenth Circuit found that the use of the word "shall" was mandatory and enforced the forum selection clause.[34] In doing so, the Tenth Circuit relied on a case from the District of Colorado involving a similar clause. That clause stated: "It is agreed for purposes of this agreement, venue shall be in Adams County, Colorado."[35] The Tenth Circuit agreed with the Colorado court that this clause was mandatory.

In *Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, the Tenth Circuit considered a clause that stated "[j]urisdiction shall be in the State of Colorado, and venue shall lie in the County of El Paso, Colorado."[36] The court concluded that "the clause [was] mandatory and

---

[30] *K&V Sci. Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 499 (10th Cir. 2002).

[31] *Am. Soda, LLP*, 428 F.3d at 927.

[32] 963 F.2d 1342 (10th Cir. 1992).

[33] *Id.* at 1343.

[34] *Id.* at 1346.

[35] *Id.* (quoting *Intermountain Sys., Inc. v. Edsall Constr. Co.*, 575 F. Supp. 1195, 1198 (D. Colo. 1983)).

[36] *Excell, Inc.*, 106 F.3d at 321.

require[d] that any breach of contract action be brought and litigated in the District Court of El Paso County, Colorado."[37]

In an unpublished case, the Tenth Circuit examined a forum selection clause in light of *Milk 'N' More* and *Excell*. The forum selection clause at issue contained two subparts. The first part stated that the agreement "shall be governed under the laws of the State of Colorado" while the second part stated that "venue is proper in the District Court of Eagle County, Colorado."[38] The court found that the second subpart language was limiting and mandatory.

> While the word "shall" appears expressly in the first part only and not in the second part, the "is proper" language of the second part, in conjunction with the designation of a particular tribunal, is functionally equivalent to the "shall be proper" language considered in *Milk 'N' More* and the "venue shall lie" language considered in *Excell*. . . . Indeed, we see little to distinguish the language here from the forum selection clauses in *Excell* and *Milk 'N' More*. Hence, we hold that the clause is mandatory.[39]

The same result is dictated here. The relevant portion of the forum selection clause states that either the state or federal court in Seattle, Washington "shall be proper venue for any such lawsuit or judicial proceeding." This language is substantially similar to those clauses the Tenth Circuit has found to be mandatory—venue shall be proper, venue shall be in, venue shall lie in, and venue is proper in—and is functionally equivalent to those clauses. There is no question that if the clause stated "venue shall be proper" instead of "shall be proper venue," it would be mandatory. However, the Tenth Circuit does not require a particular set of words in a specific order. All that is required for a forum selection clause to be considered mandatory is that the

---

[37] *Id.*

[38] *Dawson v. Fitzgerald*, 189 F.3d 477, at *3 (10th Cir. 1999) (unpublished table decision).

[39] *Id.*

11

parties' designated venue be accompanied by mandatory or obligatory language. Thus, the fact that the word "venue" appears at the end of the phrase, instead of the beginning, is of no significance. In this case, the parties have designated a particular venue and that designation is accompanied by the mandatory word "shall." This is sufficient to render the clause mandatory.

The cases cited by Plaintiffs are inapposite. *Mabon Limited v. Afri-Carib Enterprises, Inc.*,[40] is inconsistent with the Tenth Circuit case law cited above. *First National Bank v. Nanz, Inc.*,[41] involved a forum selection clause that only stated that the Supreme Court of New York shall have jurisdiction.[42] The clause said nothing of venue and is therefore distinguishable from the forum selection clause contained in the Escrow Agreement. Many of the other cases cited to by Plaintiffs are distinguishable for this same reason.

The clause in *American Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, stated that "the Courts of the State of Colorado/Arbitrator shall be the exclusive forum for the resolution of any disputes related to or arising out of this Term Agreement."[43] Because the parties designated the state courts or arbitration as the exclusive forum, the court did not discuss the situation presented here, where venue is specified and accompanied by mandatory or obligatory language.

Because the Court finds that the forum selection clause is mandatory, Plaintiffs bear the burden of showing that the public interest factors overwhelmingly disfavor transfer.[44] The public interest factors include: the administrative difficulties flowing from court congestion; the

---

[40] 29 S.W.3d 291, 297 (Tex. Ct. App. 2000).

[41] 437 F. Supp. 184 (S.D.N.Y. 1975).

[42] *Id.* at 186.

[43] *Am. Soda, LLP*, 428 F.3d at 924.

[44] *Atl. Marine*, 134 S.Ct. at 583.

12

local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law.[45]

"When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge."[46] In each of these areas, with the exception of weighted filings per judge, the Western District of Washington has better statistics than the District of Utah. Thus, this factor does not weigh against transfer.

Next, "[w]hen the merits of an action are unique to a particular locale, courts favor adjudication by a court sitting in that locale."[47] The parties agree that this case is not localized in any respect. Therefore, this factor does not disfavor transfer.

Finally, "[i]n a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law."[48] The parties disagree as to what law will apply. However, it appears that a combination of state and federal laws will apply to Plaintiffs' claims. Given the various law to be applied, there is little interest in trying the case in Utah, even if Utah law applies to some of Plaintiffs' state-law claims. The judges in Washington are well qualified to decide the state law issues.[49] Therefore, this factor also does not disfavor transfer. Because the public interest factors do not overwhelmingly disfavor transfer, the Court will enforce the forum selection clause and transfer this case.

---

[45] *Id.* at 581 n.6.
[46] *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010).
[47] *Id.* at 1170.
[48] *Id.* at 1169.
[49] *Id*. at 1170.

## III. CONCLUSION

It is therefore

ORDERED that the Quartzburg Defendants' Motions to Dismiss for Lack of Personal Jurisdiction (Docket No. 23 in Case No. 2:15-CV-850 and Docket No. 13 in Case No. 2:15-CV-851) are DENIED. It is further

ORDERED that Defendant U.S. Bank's Motions to Transfer Venue (Docket No. 20 in Case No. 2:15-CV-850 and Docket No. 10 in Case No. 2:15-CV-851) are GRANTED.

The Clerk of the Court is directed to transfer these cases to the Western District of Washington and close these cases forthwith.

DATED this 11th day of July, 2016.

BY THE COURT:

Ted Stewart
United States District Judge